CUMBERLAND TELEPHONE & TELEGRAPH CO. v. CITY OF MEMPHIS.

(Circuit Court, W. D. Tennessee, at Memphis. June 11, 1908.)

1. TELEGRAPHS AND TELEPHONES (§ 33*)—RATES—REGULATION BY CITY—REASONABLENESS.

Though a city independent of contract may fix telephone rates within its limits, the rates so fixed in order to be valid must be reasonable, fair, and not confiscatory.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. § 21; Dec. Dig. § 33.*]

2. TELEGRAPHS AND TELEPHONES (§ 33*)—RATES—REASONABLENESS—DETERMINATION.

Telephone rates fixed by a city in order to be reasonable must be sufficient to pay expenses, comprising actual expenses of operation, and also annual charges that must be paid before any real profit can be realized, and, in addition, a net profit equal to that which would be realized as a business question from any other business where the capital and risk were the same.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. § 21; Dec. Dig. § 33.*]

3. TELEGRAPHS AND TELEPHONES (§ 33*)—MUNICIPAL RATES—REASONABLENESS.

Where rates fixed by a city council for telephone service within its limits were determined without any actual consideration of the cost of the company's plant, and cost of operation and maintenance, the amount of taxes and other dues exacted by the local government, and the rapidity of deterioration due to climatic or other causes, and it appeared that if

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

carried into effect there would be no profit or ·distribution of dividends among the stockholders, the rates were confiscatory and invalid.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. § 21; Dec. Dig. § 33.*]

In Equity. Bill by Cumberland Telephone & Telegraph Company against the City of Memphis to restrain an enforcement of telephone rates by the city council as confiscatory. Injunction made perpetual.

E. E. Wright and W. L. Granbery, for complainant.

Thos. H. Jackson, City Atty., for defendant.

EVANS, Special District Judge. Assuming that the city of Memphis, notwithstanding any contract it may have with the complainant, has the right and power to fix the rates which the latter may charge its customers in Memphis, this general power must nevertheless be exercised in such manner as not to violate the constitutional rights of the complainant. The rates which the city may fix must be reasonable and fair, and not confiscatory. I do not understand this proposition to be controverted. The question now is not whether the rates charged by the complainant are too high, but whether the very different rates fixed by the ordinance are so low as practically to take complainant's property away from it, and appropriate it to the use of the people of the city. The law in the premises· as settled by the Supreme Court of the United States is well and accurately summarized in Beale and Wyman's late work on Railroad Rate Regulation in this language:

"Sec. 312. The reasonableness of the schedule as a whole depends, as has been seen, upon whether it yields a fair return to the carrier. This is largely a mathematical question. The carrier is entitled, first, to pay all expenses, which would include both the actual expenses of operation and also certain annual charges that must be paid before any real profit can be realized. He is entitled, furthermore, to gain a fair profit on his capital invested. The determination of the actual amount of the capital invested may be a matter of some difficulty; once determined, the rate of profit upon that amount of capital is a question which will be determined, generally speaking, by the ordinary business profit of the time and place. A schedule of rates will be reasonable from the point of view of the carrier if it yields him a net profit equal to that which would be realized, as a business question, from any other business where the capital and the risk were the same."

While in terms this language refers to railroad rates, it is not possible that any different rule can grow out of the fact that the ordinance in this case refers to telephone rates only. The holders of stock in the complainant company are entitled to a fair return upon their investment if the company can earn it, but the testimony leaves no doubt that the rates prescribed by the ordinance would leave practically nothing to the stockholders. Under its operation they would lose, as the testimony shows, even the 2, 3, or at best 4 per cent. per annum profit on $1,125,000 which has been earned in late years. If to large taxation and other enforced expenditures already properly exacted the city (now the complainant's plant is fully installed) can add the burden of rates fixed arbitrarily that would so diminish earnings (though not expenses) as to leave no dividends whatever for stockholders, manifestly

the money invested by them would be used for the benefit alone of the people of Memphis, and not at all for the profit of those who made the investment under inducements offered by the city.

The Governor of one of our greatest states recently vetoed a proposed rate bill upon the ground that no real effort had been made to ascertain with accuracy those factors of exact information, etc., upon which alone such legislation could fairly and justly rest. This we believe was good reason for executive action. In this instance the city of Memphis, not only did not investigate the facts as they existed at home before enacting the ordinance (though indeed that would not of itself affect its validity), but has not done so under the spur of this litigation. It may have been that this latter course was pursued because there was no hope of overcoming the force of complainant's testimony which was taken early and promptly. At all events, that testimony is practically uncontradicted, so far as it directly bears upon the controversy. Presumably the same information would have been obtained if investigation had been made before the ordinance was enacted. True, there was an open meeting held by the committee of the legislative council, at which there were arguments, and the committee seems to have gathered statistics as to telephones in other cities throughout the country, but apparently there was no effort to get precise and detailed information as to the exact status at Memphis—the one place about which it was essential to learn. The conditions in no two cities may be alike, and it seems reasonable to say that questions as to telephone rates may in large measure be local questions to be determined upon factors, among which the most important may be (1) the cost of the plant; (2) the cost of operation and maintenance; (3) the amount of taxes and other dues exacted by the local government; and (4) the rapidity of deterioration due to climatic or other causes. If these be among the controlling factors, no one of them seems to have been considered in any detail by the city. But, whether or not any or all of them were considered in preparing the ordinance, the testimony shows that the result of operating in Memphis under it is certain. That result seems to us to be destructive of the complainant's rights under the Constitution of the United States. In Judge Clark's opinion upon the motion for the temporary injunction it is clearly indicated that that learned and lamented judge thought that the city had no power or authority to enact the ordinance for two reasons, viz.: (1) Because the state had never given the city such authority; and (2) because the city had a contract with the complainant which could not be thus impaired.

We are not to be considered as dissenting from either of those views. We have not had time to examine either proposition, nor inclination to do so, because we are entirely content to decide the case on final hearing upon the one ground herein discussed. It seems to us, upon a careful consideration of the testimony, that the temporary injunction should be made perpetual.

A final decree giving that relief and the costs of this proceeding may be prepared.